UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE SEQUEL GROUP, INC., et al., | § | |
|     Plaintiffs, | § | |
| v. | § | No. 3:16-CV-02056-N (BF) |
| WILMINGTON SAVINGS FUND | § | |
| SOCIETY FSB, et al., | § | |
|     Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the district court referred this removed civil action to the United States Magistrate Judge Paul D. Stickney for pretrial management. *See* Order of Reference 1, ECF No. 19. Before the Court is Defendant's Motion to Dismiss, Alternative Motion for More Definite Statement, and Brief in Support [ECF No. 11] ("Defendant's motion"). For the following reasons, the district court should **GRANT** Defendant's motion.

### Background

This case arises out of foreclosure proceedings against Jay P. Martin ("Martin"), The Sequel Group, Inc. ("Sequel Group"), and Glenn R. Snyder ("Snyder") in his capacity as trustee of the Jay P. Martin Irrevocable Trust (collectively, "Plaintiffs") over property located at 1503 Shady Tree Place, Duncanville, Texas (the "Property"). Am. Compl. 1-2 ¶¶ 2.1-2.3, ECF No. 10. Plaintiffs originally filed this action against Wilmington Savings Fund Society, FSB d/b/a Christiana Trust as Trustee of the Residential Credit Opportunities Trust Series 2015-1 ("RCOT"), Bayview Loan Servicing, L.L.C. ("Bayview"), and CitiMortgage, Inc. (collectively, "Defendants") on May 20, 2016, in the 193rd District Court of Dallas County, Texas. Notice of Removal 1, ECF No. 1. On July 15, 2016, Defendants timely removed this case pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a). *Id.* at 3-4 ¶ 6; 28 U.S.C. § 1332(a).

In Plaintiffs' amended complaint, Plaintiffs allege that Sequel Group purchased the Property by executing a promissory note (the "Note") and deed of trust ("DOT") with Colonial Financial, L.P. who later sold the Note or servicing rights to Defendants. Am. Compl. 2 ¶ 3.1, ECF No. 10. Plaintiffs allege in September 2014 Bayview demanded immediate, full payment of the Note refusing to accept any other payments by Plaintiffs. *Id.* at 3 ¶ 3.2. Plaintiffs contend that their payments were not applied to the Note, the payments were wrongfully refused, and this conduct caused the wrongful foreclosure on the Property. *Id.* at 3 ¶ 3.3. Plaintiffs also allege they entered the "Fresh Start program" (hereafter "Fresh Start") and the "Auto Pay program" (hereafter "Auto Pay") with Bayview to bring the loan current. *Id.* at 5 ¶ 3.5. In short, Plaintiffs allege they began receiving conflicting amounts as to what they owed under the Note and never received proper notice under the Texas Property Code from Defendants in their attempt to foreclose on the Property. *Id.* at 6-8 ¶¶ 3.6-3.11. Plaintiffs assert claims for breach of contract, wrongful foreclosure, unreasonable debt collection, violations of the Texas Fair Debt Collection Practices Act (TDCPA), violations of the Texas Deceptive Trade Practices Act (DTPA), and violations of the Federal Debt Collection Practices Act (FDCPA) against Defendants.

Defendant RCOT moves pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(1), 12(b)(6), and 12(e) for the Court to dismiss Plaintiffs' claims with prejudice, or alternatively, require Plaintiffs to amend their complaint. Def.'s Mot. 1-2, 13, ECF No. 11. RCOT filed its motion on October 3, 2016. *See* Docket. The local civil rules require that a response be filed within twenty-one days of an opposed motion being filed. Loc. Civ. R. 7.1(e). The deadline has long since passed, and Plaintiffs have not filed a response. *See* Docket. The Court therefore considers Defendant's motion without the benefit of a response. This motion is ripe for determination.

## Legal Standard

To survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level. . . ." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). In ruling on the motion to dismiss, the court may consider documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, and matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

## Analysis

### Standing

RCOT first asserts the Court should dismiss Plaintiffs' claims because of a lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Def.'s Mot. 1-2, ECF No. 11; FED. R. CIV. P. 12(b)(1). RCOT contends that Mr. Martin and Mr. Snyder lack standing to enforce the loan's terms relying on *Lakiesha v. Bank of N.Y. Mellon*. Def.'s Mot. 1, ECF No. 11; *Lakiesha v. Bank of N.Y. Mellon*, No. 3:15-CV-0901-B, 2015 WL 5934439, at *3 (N.D. Tex. Oct. 9, 2015). RCOT's reliance on *Lakiesha* is correct as it shows that Mr. Martin and Mr. Snyder do not have standing under the DOT or the Note. Plaintiffs fail to show or allege that Mr. Martin or Mr. Snyder have an interest in the Property or are intended third-party beneficiaries. "Under Texas

law, '[s]tanding is a constitutional prerequisite to filing suit for both individuals and associations.'" *Lakiesha*, 2015 WL 5934439, at *3 (quoting *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007)). "To have standing to enforce a contract, one must be a party thereto; generally speaking, a third party cannot enforce a contract if the third party benefits only incidentally from it." *Id.* (citing *Duque v. Wells Fargo, N.A.*, 462 S.W.3d 542, 547 (Tex.App.— Houston [1st Dist.] 2015, no pet.); (quoting *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011)) (internal quotation marks omitted). "That is to say, a third party may only enforce a contract if that third party is an intended beneficiary under the agreement." *Id.* "[T]here is a presumption against conferring third-party-beneficiary status on noncontracting parties." *Id.* (quoting *Lomas*, 223 S.W.3d at 306). "A court will not create a third-party beneficiary contract by implication." *Id.* at *4 (quoting *Duque*, 462 S.W.3d at 547). Even liberally construing Plaintiffs' amended complaint, the Court finds that Plaintiffs fail to allege sufficient facts to hold that Mr. Martin and Mr. Snyder have standing under the Note or DOT.

RCOT also argues that Sequel Group also does not have standing because it lacks the capacity to bring suit against Defendants. Def.'s Mot. 3, ECF No. 11. The Texas Tax Code § 171.252 provides "[i]f the corporate privileges of a corporation are forfeited under this subchapter: (1) the corporation shall be denied the right to sue or defend in a court of this state[.]" Tex. Tax. Code § 171.252; *Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004) (holding plaintiff precluded from suit under § 171.252). "This prohibition has also been applied to preclude litigating in a federal court that is sitting in diversity." *Robinette*, 2004 WL 789870, at *2 n.4 (citing *Farris v. Sambo Rests., Inc.*, 498 F.Supp. 143, 148 (N.D. Tex. 1980) (Sanders, J.)). However, "[t]he Texas Tax Code does not bar use of the federal courts in disputes over federal *constitutional* rights." *Hearn v. Internal Revenue Agents*, 623 F. Supp. 263, 266-67 (N.D. Tex.

1985) (citing 6 Wright & Miller Fed. Prac. and Proc. Civ. § 1561 (1971)) (emphasis added).[1] It is unclear to the Court based upon § 171.252, and the holding of *Hearn*, whether Sequel Group has standing to bring this suit. Since Plaintiffs' failed to file a response to RCOT's motion, they do not address this issue. Plaintiffs also do not provide in their complaint whether Sequel Group is a Texas corporation in good standing. *See Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 752 (5th Cir. 1986) (a corporation that was not in good standing under Texas law at the time of filing suit may revive its privileges and access to the courts by obtaining reinstatement of its corporate charter through payment of the delinquent franchise taxes); *G. Richard Goins Constr. Co., Inc. v. S.B. McLaughlin Assocs., Inc.*, 930 S.W.2d 124, 128 (Tex.App.—Tyler 1996, reh'g overruled). However, since Plaintiffs assert claims arising under federal law, the Court exercises federal question jurisdiction over Plaintiffs' claims. 28 U.S.C. § 1331. "Of course, if subject-matter jurisdiction is not based upon diversity of citizenship, the federal court need not apply forum-state restrictions on a corporation's ability to sue." Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Fed. Prac. and Proc. § 1561 (3d ed. 1998) (citing cases); *Biosite, Inc. v. XOMA Ltd.*, 168 F. Supp. 2d 1161, 1167 (N.D. Cal. 2001); *Viva Ltd. v. United States*, 490 F. Supp. 1002, 1008 (D. Colo. 1980). Accordingly, in viewing Plaintiffs' complaint in the light most favorable to them, the Court finds Sequel Group does have standing and continues with its analysis of RCOT's motion.

### Unreasonable Debt Collection

"Under Texas law, '[u]nreasonable collection is an intentional tort.'" *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex.App.—Dallas 2008, no pet.)). "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case."

---

[1] *See also Vahlco Corp. v. C. I. R.*, 97 T.C. 428, 433-34 (1991) (analyzing *Hearn*).

5

*Id.* "Generally speaking, however, to recover on such a claim, a plaintiff must prove that '[a] defendant['s] debt collection efforts 'amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'" *Id.* (citing *Steele v. Green Tree Serv., L.L.C.*, No. 3:09-CV-0603-D, 2010 WL 3565415, at *6 (N.D. Tex. Sept. 7, 2010) (quoting *EMC Mortg.*, 252 S.W.3d at 868-69)).

Although unclear, it appears to the Court Plaintiffs allege that Defendants committed an unreasonable debt collection by demanding payment in full of the Note for an "unconscionably high amount." Am. Compl. 3 ¶ 3.2, ECF No. 10. Plaintiffs allege that Mr. Martin suffered extreme mental anguish due to Defendants' collection activities which caused damage to his health. *Id.* at 6 ¶ 3.8. RCOT argues that Plaintiffs fail to allege facts or identify any conduct by RCOT that was "willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." Def.'s Mot. 4, ECF No. 11.

"Pleadings sufficient to support a claim for unreasonable collection efforts must contain facts that amount to 'a course of harassment' by the defendant . . . ." *Kopin v. Wells Fargo Bank, N.A.*, No. 4:11-CV-751, 2013 WL 74601, at *6 (E.D. Tex. Jan. 4, 2013) (quoting *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2011 WL 676955, at *6 (E.D. Tex. Jan. 27, 2011), *adopted by*, 2011 WL 675392 (E.D. Tex. Feb. 16, 2011)). "[T]he standard for evaluating a claim of unreasonable collection efforts requires a showing of intent rather than negligence." *Id.* (citing *Bray v. Cadle Co.*, No. 4:09-CV-663, 2010 WL 4053794, at *19 (S.D. Tex. Oct. 14, 2010); *Narvaez*, 757 F. Supp. 2d at 636)); *see also Cooper v. Wells Fargo Bank, N.A.*, No. 4:11-CV-440, 2014 WL 3671204, at *6 (E.D. Tex. July 22, 2014) ("The standard for showing unreasonable collection efforts requires intent, not mere negligence."). Plaintiffs fail to assert any facts that RCOT's actions could "amount[] to a course of harassment that was willful, wanton,

malicious, or intended to inflict mental anguish and bodily harm." *Cooper*, 2014 WL 3671204, at *6. Accordingly, the district could should grant RCOT's motion to dismiss this claim.

### FDCPA

In order to state a FDCPA claim, Plaintiffs must allege facts sufficient to show the following: "(1) [Plaintiffs have] been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Hunsinger v. SKO Brenner Am., Inc.*, No. 3:13-CV-988-D, 2013 WL 3949023, at *2 (N.D. Tex. Aug. 1, 2013) (quoting *Browne v. Portfolio Recovery Assocs., Inc.*, No. H-11-2869, 2013 WL 871966, at *4 (S.D. Tex. Mar. 7, 2013); citing *Stewart v. Alonzo*, No. C-08-347, 2009 WL 174938, at *2 (S.D. Tex. Jan. 26, 2009)). RCOT argues that Plaintiffs fail to allege RCOT, or any other Defendants, are debt collectors. Def.'s Mot. 10, ECF No. 11. Further, RCOT asserts the activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA. *Id.*

Plaintiffs' complaint arises out of Defendants' initiation of foreclosure proceedings on the Property pursuant to the DOT. "[N]on-judicial foreclosure under a deed of trust is not a debt collection as defined in the FDCPA." *Castanon v. Wells Fargo Bank, N.A.*, No. 3:11-CV-3472-P, 2012 WL 3200869, at *3 (N.D. Tex. June 22, 2012) (citing *Bittinger v. Wells Fargo Bank N.A.*, 744 F. Supp. 2d 619, 626 (S.D. Tex. 2010)). Further, Plaintiffs fail to allege facts sufficient to show that RCOT or any Defendants are debt collectors as defined by the FDCPA. The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Mortgage lenders and mortgage servicing companies are not "debt collectors" within the meaning of the FDCPA. *See Montgomery v. Wells Fargo Bank, N.A.*, 459 F. App'x 424, 428

n.1 (5th Cir. 2012); *Caldwell v. Flagstar Bank, F.S .B.*, 3:12-CV-1855-K (BD), 2013 WL 705110, at *10 (N.D. Tex. Feb. 4, 2013). Therefore, Plaintiffs have failed to allege facts sufficient to state a FDCPA claim. The district court should grant RCOT's motion to dismiss Plaintiffs' FDCPA claim.

## TDCPA and DTPA

RCOT is entitled to dismissal of Plaintiffs' claims under the TDCPA. "The [TDCPA] is the statutory embodiment of common law unreasonable collection practices and prohibits use of deceptive means, making misrepresentations, harassment, and threats in the course of collecting a consumer debt." *Starling v. JPMorgan Chase Bank, N.A.*, No. 3:13-CV-777-M-BN, 2013 WL 4494525, at *6 (N.D. Tex. Aug. 22, 2013) (citing TEX. FIN. CODE §§ 392.301(a)(8), 392.302(4), 392.303(a)(2), 392.304(a)(8), (a)(19)). The TDCPA's definition of "debt collector" is broader than the FDCPA's and includes mortgage servicing companies and debt assignees as long as the mortgage was not in default at the time it was assigned by the originator. *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 2013 WL 4080717, at *4 (5th Cir. 2013). Section 392.301(a)(8) of the TDCPA prohibits a debt collector from "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). Plaintiffs allege that Defendants violated § 392.301(a)(8) by threatening to foreclose and then actually foreclosing while Mr. Martin was participating in the Fresh Start program. Am. Compl. 9 ¶ 4.3, ECF No. 10. Plaintiffs also allege no notice of default of the program was sent by Defendants. *Id*. However, the TDCPA does not prohibit a creditor from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." TEX. FIN. CODE § 392.301(b)(3); *Starling*, 2013 WL 4494525, at *6; *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 F. App'x 253, 257 (5th Cir. 2013). Plaintiffs do not point to any specific threats, prohibited actions, or false and deceptive statements by RCOT that violate the TDCPA. Plaintiffs' mere recital of alleged

violations of "[§§] 392.304(a)(1)(A), (2), (4), (5)(A) & (B), (8)" is insufficient to state a claim under the TDCPA. Am. Compl. 9 ¶ 4.3, ECF No. 10; *see also* Def.'s Mot. 5-9, ECF No. 11. "This court has held that a 'general assertion of 'wrongful charges' is insufficient to state a claim under Section 392.303(a)(2).'" *Fields v. JPMorgan Chase Bank, N.A.*, 638 F. App'x 310, 313 (5th Cir. 2016) (quoting *Williams v. Wells Fargo Bank, N.A.*, 560 Fed. App'x 233, 240 (5th Cir. 2014)). Plaintiffs' mere statutory citation to §§ 392.304(a)(1-8) is insufficient to state a claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiffs allege that Defendants violated the DTPA through their violations of the TDCPA. Am. Compl. 9 ¶ 4.4, ECF No. 10; TEX. FIN. CODE § 392.404(a). "The TDCPA is a 'tie-in' statute, whereby a violation of that statute also violates the DTPA. However, because the court has already concluded that dismissal of plaintiff's TDCPA claim is warranted, plaintiff has failed to state a claim under the DTPA through any tie-in statute." *Brock v. Fed. Nat. Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *4 (N.D. Tex. Feb. 24, 2012). Plaintiffs "provide no factual allegations to support their TDCPA claim, and their bare legal conclusion and statutory citation are insufficient to state a claim." *Llanes v. U.S. Bank, Nat. Ass'n*, No. 3:13-CV-2243-M-BN, 2014 WL 97362, at *5 (N.D. Tex. Jan. 8, 2014) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555). Further, Plaintiffs fail to allege they are "consumers" which is a required element under the DTPA.[2] "Since the lending of money is not a good or service, a borrower whose sole objective is to get a loan does not become a consumer under the []DTPA." *Id.* (citing *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992)). Accordingly, Plaintiffs fail to state a claim under the DTPA or through the TDCPA as a tie-in statute. The

---

[2] "The elements of a cause of action under the []DTPA are: '(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages.'" *Llanes*, 2014 WL 97362, at *5 (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)).

district court should grant RCOT's motion and dismiss Plaintiffs' TDCPA and DTPA claims against RCOT.

### Wrongful Foreclosure

In Texas, the elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Biggers v. BAC Home Loans Serv., L.P.*, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011) (citing cases). Plaintiffs allege that Defendants violated Texas Property Code § 51.0021 for failing to give them notice of the foreclosure sale. Am. Compl. 4 ¶ 3.4, ECF No. 10. Plaintiffs contend the notice of foreclosure sale merely identifies Defendants as "Lender" and does not state the original payee of the Note. *Id*. Plaintiffs allege they never executed a deed of trust and did not receive notice of the foreclosure sale. *Id*. at 4 ¶ 3.4, 6-7 ¶¶ 3.9-3.10. Plaintiffs summarize, "the foreclosure sale was not conducted properly because the notices were not sent to the correct address, did not adequately identify the debt, and did not adequately identify the holder of the note, *inter alia*." *Id*. at 8 ¶ 3.11.

Plaintiffs' claim of wrongful foreclosure due to a lack of notice fails because "[s]ervice of notice is complete when the notice is sent via certified mail. . . . There is no requirement that [plaintiff] receive the notice." *Martins v. BAC Home Loans Serv., L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (citing TEX. PROP. CODE § 51.002(e)). Further, it appears RCOT strictly complied with Texas Property Code § 51.002. Def.'s App. 18-45, ECF No. 12. Additionally, "[t]he affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." *Martins*, 722 F.3d at 256 (quoting TEX. PROP. CODE § 51.002(e)). Here, RCOT offers the Substitute Trustee's Deed, which states by an affidavit from David Garvin that RCOT as the lender complied with Texas Property Code § 51.002. Def.'s App. Ex. 11 at 42, ECF No. 12. The affidavit also states that service was proper and sent by certified mail

at least 21 days before the date of sale. *Id.* Plaintiffs' allegations fail to raise a reasonable inference that there were defects in the foreclosure. *Warren v. Bank of Am., N.A.*, No. 3:13-CV-1135-M, 2013 WL 8177096, at *7 (N.D. Tex. Nov. 15, 2013).

It also does not appear the Property was sold at a "grossly inadequate selling price." Plaintiffs allege that the Property is worth $210,000.00 and the balance on the Note was no more than $140,000.00. Am. Comp. 3 ¶ 3.3, ECF No. 10. Plaintiffs state, "[d]ue to the high amount of lost equity, the sales price was grossly inadequate." *Id*. An inadequate selling price is a necessary element of a wrongful foreclosure claim. *Biggers*, 767 F. Supp. 2d at 729; *Martins*, 722 F.3d at 256 ("A grossly inadequate price would have to be so little as 'to shock a correct mind'") (citations omitted).[3] It appears to the Court that the Property was sold for $175,000.00 at the Substitute Trustee's Sale. Def.'s App. Ex. 11 at 39, ECF No. 12. The difference between the sales price and the estimated property value is not shocking and is therefore not "grossly inadequate."

Since there was no defect in the foreclosure sale proceedings and Plaintiffs fail to show how the sale price was grossly inadequate—both of which are required elements of a wrongful foreclosure action—Plaintiffs have failed to state a claim for wrongful foreclosure under Texas law. The district court grant RCOT's motion to dismiss Plaintiffs' wrongful foreclosure claim.[4]

### Breach of Contract

Under Texas law, a plaintiff must demonstrate the following elements to succeed on a breach of contract claim: (1) the existence of a valid contract; (2) performance or tendered

---

[3] Further, RCOT alleges that Plaintiffs currently remain in possession of the Property and therefore their wrongful foreclosure claim fails. *See* Def.'s Mot. 11, ECF No. 11. "[R]ecovery for wrongful foreclosure is premised upon one's lack of possession of the subject property." *Brackens v. Ocwen Loan Serv., L.L.C.*, No. 3:13-CV-3458-L, 2015 WL 1808541, at *4 (N.D. Tex. Apr. 21, 2015) (citing *Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, at *4 (N.D. Tex. June 24, 2009)).

[4] *Martins*, 722 F.3d at 256 ("Because there was no defect, and the sale price was not grossly inadequate, there was no wrongful foreclosure").

performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 140 (Tex.App.—Corpus Christi 2008, no pet.).

It is well-established that a party in default under a contract cannot assert a claim for breach of contract against the other party. *Water Dynamics, Ltd. v. HSBC Bank USA, Nat'l Ass'n*, 509 F. App'x 367, 369 (5th Cir. 2013) (citing *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)); *see also Mitchem v. Mortg. Elec. Registration Servs., Inc.*, No. 3:12-CV-1762-M-BH, 2013 WL 3870038, at *7-8 (N.D. Tex. Jul. 26, 2013) (Lynn, J.) (dismissing plaintiffs' breach of contract claim because plaintiffs conceded that they stopped making payments on their loan and, as a matter of law, plaintiffs' default prohibits any recovery on their breach of contract claim). RCOT asserts that Sequel Group was in default on its mortgage payments and this default status precludes any recovery under Plaintiffs' breach of contract claim. Def.'s Mot. 12, ECF No. 11. Again, Plaintiffs failed to respond to RCOT's motion and their complaint fails to point to any specific provision of the contract with RCOT that was allegedly breached. *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011) ("[I]n order to properly plead a claim based on breach of the Note and Deed of Trust, Plaintiffs must point to a specific provision in the contract that was breached by the Defendant.") (citation omitted). Plaintiffs admit they were in default on their loan payments, but contend Bayview waived any default by accepting two payments under the Fresh Start program and waived enrollment in the Autopay program. Am. Compl. 5 ¶ 3.5, ECF No. 10. However, Plaintiffs were still in default on July 24, 2015. Def.'s App. Ex. 6 at 18, ECF No. 12. On November 10, 2015, RCOT sent Plaintiffs a Notice of Foreclosure letter with the opportunity to cure prior to the December 1, 2015, foreclosure sale. Ex. 7 at 26-27. "It is a well-established rule that 'a party to a contract who is himself in default cannot maintain a suit for its breach.'" *See Dobbins*, 785 S.W.2d at 378 (citation omitted). Further, "[u]nder Texas law, '[w]aiver is the intentional relinquishment of a right actually

known, or intentional conduct inconsistent with claiming that right.'" *Lombardi v. Bank of Am.*, No. 3:13-CV-1464-O, 2014 WL 988541, at *9 (N.D. Tex. Mar. 13, 2014) (quoting *Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *6 (N.D. Tex. May 30, 2012)). "To prove waiver, a party must show (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* (internal quotation marks omitted). Even based on the inference of waiver, Plaintiffs have not shown "conclusive evidence" that RCOT "unequivocally manifested" an intent to no longer assert its claim under the Note. *Id.* (quoting *Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *2 (N.D. Tex. Oct. 3, 2012)).

Accordingly, Plaintiffs have failed to state a claim for breach of contract. The district court should grant RCOT's motion to dismiss Plaintiffs' breach of contract claim.

## **RECOMMENDATION**

For the foregoing reasons, the undersigned respectfully recommends that the district court should **GRANT** Defendant's Motion to Dismiss [ECF No. 11] and dismiss Plaintiffs' claims against RCOT with prejudice.[5]

**SO RECOMMENDED**, this 7th day of June, 2017.

---

[5] Ordinarily, the Court would allow Plaintiffs to amend their complaint in an attempt to cure the pleading defects identified by RCOT. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (court should allow plaintiff at least one opportunity to cure pleading deficiencies before dismissing a case, "unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"). However, Plaintiffs never sought leave to amend, even after RCOT pointed out Plaintiffs' deficiencies in their motion to dismiss. Nor did Plaintiffs respond to RCOT's motion. The undersigned therefore determines that Plaintiffs are unwilling or unable to amend their complaint in a manner that will avoid dismissal and that dismissal with prejudice is appropriate. *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (affirming dismissal with prejudice after lengthy pendency of case which provided plaintiff ample opportunity to amend complaint); *see also Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-2871-L, 2012 WL 1836095, at *7 (N.D. Tex. May 21, 2012) (concluding plaintiffs had pled their best case where they did not file response to motion to dismiss or request to amend their pleadings).

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).