IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE SEQUEL GROUP, INC., et al., § | |
| Plaintiffs, § | |
| § | |
| v.  § | Case No. 3:16-CV-2056-N |
| § | |
| WILMINGTON SAVINGS FUND § | |
| SOCIETY FSB, et al., § | |
| Defendants. § | |

## ORDER

This Order addresses Defendant Bayview Loan Servicing, LLC's ("Bayview") motion for summary judgment [ECF No. 24]. Because Bayview has shown there is no genuine dispute as to any material fact, the Court GRANTS the motion.

## BACKGROUND

This case arises out of foreclosure proceedings initiated against certain residential real property located in Duncanville, Texas (the "Property"). The summary judgment record shows that Plaintiff the Sequel Group, Inc. ("SGI") purchased the Property in March 2000. *See* Pls.' MSJ App. 6-8. In connection with the Purchase, SGI obtained a loan (the "Loan") from Colonial Financial, L.P., evidenced by a Real Estate Lien Note (the "Note"), and secured by a Deed of Trust (the "Deed of Trust") in favor of Colonial Financial, L.P. *See* Pls.' MSJ App. 9-10, 12-17. Plaintiff Jay P. Martin ("Martin"), in his capacity as President of SGI, executed the Note and Deed of Trust. *See* Pls.' MSJ App. 10, 16. SGI later transferred the Property to the Jay P. Martin Irrevocable Trust (the "Trust"). *See* Pls.' MSJ App. 18-19. Plaintiff Glenn R. Snyder is the Trustee of the Trust. *See* Pls.' MSJ App. 1-2.

The original lender and its successors and assigns transferred the secured interest in the Property and the rights to service the Loan several times. *See* Def. MSJ App., Ex. B. In December 2011, Defendant CitiMortgage, Inc. ("CitiMortgage") was servicing the Loan. CitiMortgage sent

1

written notice to Martin that the Loan was in default. *See* Pls.' MSJ App. 20-21. Over the next two years, CitiMortgage corresponded with Plaintiffs regarding the Loan and the alleged default. *See* Def's MSJ App., Exs. F1–F5. Specifically, the correspondence detailed that the Loan was in arrears, and Plaintiffs had failed to pay real property taxes due on the Property. *Id.*

In 2013, Bayview acquired the rights to service the Loan, *see* Pls.' MSJ App. 28-30, and attempted to work with Plaintiffs to bring the Loan current. In or around November 2013, Bayview offered SGI the opportunity to participate in its "Fresh Start" program. *See* Pls.' MSJ App. 31, 37. Martin accepted, or attempted to accept, the offer on behalf of SGI by executing an Acknowledgment and tendering the required payment by check. *See* Pls.' MSJ App. 55-58. However, Bayview returned the check to SGI, *see* Pls.' MSJ App. 59-61, purportedly because participation in the Fresh Start program required SGI to enroll in Bayview's "Auto Pay" program, and payment by check failed to satisfy the Auto Pay condition of the Fresh Start program. Throughout 2014, SGI attempted to tender several payments to Bayview, but Bayview returned the payments because the servicer did not believe the funds were sufficient to bring the Loan current. *See* Pls'. MSJ App. 62. In September 2014, Bayview demanded $73,445.28 to bring the Loan current, *See* Pls.' MSJ App. 64-65. Bayview's demand included $68,415.41 for "Rec Corp Advance." *See id*. Plaintiffs contend Bayview has never justified or explained why the lender is entitled to recover the Rec Corp Advance.

In June 2015, Defendant Wilmington Savings Fund Society, FSB d/b/a Christiana Trust as Trustee of the Residential Credit Opportunities Trust Series 2015-1 ("RCOT") acquired the Loan and the secured interest in the Property. *See* Def. MSJ App., Ex. B. RCOT foreclosed on the Property on December 1, 2015. *See* Def. MSJ App., Ex. D. Plaintiffs allege that SGI filed for Chapter 7 bankruptcy just prior to the sale, on December 1, 2015. *See* Pls.' MSJ App. 99-102. Plaintiffs contend RCOT's foreclosure was wrongful because it was in violation of the automatic bankruptcy stay and because the Property sold for an amount that resulted in an equity loss to SGI.

On May 20, 2016, Plaintiffs filed an Original Petition in the 193rd District Court of Dallas County, Texas, naming RCOT, Bayview, and CitiMortgage as defendants. Thereafter, RCOT removed the case to federal court on the basis of diversity jurisdiction. *See* Rem. Not. [ECF No. 1] at 3-6. Plaintiffs never served CitiMortgage, and the Court denied Plaintiff's request for leave to serve CitiMortgage out of time. *See* Mot. [ECF No. 23] at 2, ¶ 5 & Order [ECF No. 35]. The Court also granted RCOT's motion to dismiss, and dismissed with prejudice all of Plaintiff's claims against RCOT. *See* Order [ECF No. 51]. Bayview is thus the sole remaining defendant.

Plaintiffs' "First Amended Petition," which is the live pleading in this case, asserts claims against Bayview for unreasonable debt collection, for violations of the Texas Debt Collection Act ("TDCA"), the Texas Deceptive Trade Practices Act ("DTPA"), and the federal Fair Debt Collection Practices Act ("FDCPA"), for wrongful foreclosure, and for breach of contract. Bayview moves for summary judgment as to all of Plaintiffs' claims and causes of action on the following grounds: (1) there is no evidence of willful, wanton, or malicious conduct to support the Plaintiffs' unreasonable debt collection claim; (2) the Loan is not a consumer debt under the TDCA; (3) Plaintiffs' FDCPA claims are barred by limitations, and the Loan is not a consumer debt under the statute; (4) Bayview did not foreclose on the real property, and it cannot be liable for conduct it did not commit; and (5) Bayview did not breach the contract; rather, SGI breached by failing to pay real property taxes on the Property. Plaintiffs have filed a response to Bayview's summary judgment motion. The issues have been fully briefed, and the motion is ripe for determination.

## LEGAL STANDARDS

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party

opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## ANALYSIS

**Bayview is entitled to summary judgment on Plaintiffs' claims under the DTPA and for wrongful foreclosure.**

In their response to Bayview's summary judgment motion, Plaintiffs state that they "waive and abandon" their claims under the DTPA. Pls.' Resp. Br. 23 ¶ 81. Plaintiffs further acknowledge that they have not asserted a wrongful foreclosure claim against Bayview. *Id.,* at 24 ¶ 90. In view of

4

these statements, it is clear that Bayview is entitled to summary judgment on Plaintiffs' claims for violations of the DTPA and wrongful foreclosure.

**Bayview is entitled to summary judgment on Plaintiffs' claim for unreasonable debt collection.**

"Under Texas law, '[u]nreasonable collection is an intentional tort.'" *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.)). "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Id*. "Generally speaking, however, to recover on such a claim, a plaintiff must prove that '[a] defendant['s] debt collection efforts' amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id*. (citing *Steele v. Green Tree Serv., L.L.C.*, 2010 WL 3565415, at *6 (N.D. Tex. Sept. 7, 2010)). Bayview moves for summary judgment as to Plaintiffs' common law claim for unreasonable debt collection on the ground that there is no evidence of willful, wanton, or malicious conduct by Bayview in connection with its collection efforts.

In response to Bayview's no evidence argument, Plaintiffs argue that Bayview "dangled" the opportunity to participate in the Fresh Start program and then "pulled the rug out," preventing Plaintiffs from obtaining a significant principal reduction on the Loan. Plaintiffs further argue that Bayview attempted to collect $68,415.41 from them for "Rec Corp Advance," the purpose of which was never explained to them. Plaintiffs also point to "contentious" email exchanges between Martin and a Bayview employee, Nathaniel Thomas ("Thomas"), as evidence that Bayview's conduct was intended to inflict mental anguish on Martin.

Bayview's actions in offering Plaintiffs the opportunity to participate in the Fresh Start Program, but later rescinding the offer because Plaintiffs did not comply with the condition to enroll in Auto Pay, were not wanton or malicious. *See Cooper v. Wells Fargo Bank, N.A.*, 2014 WL

5

3671204, at *6 (E.D. Tex. Jul. 22, 2014) (holding that plaintiff's assertion defendant led them to believe they qualified for refinancing under HARP, when they did not qualify, did not amount to a course of harassment that was willful, wanton, or malicious). Rather, Bayview was merely attempting to negotiate a workout of a defaulted loan. That Plaintiffs never consummated the Fresh Start under the strict terms and conditions offered by Bayview does not constitute unreasonable collection efforts. Nor is there anything about Bayview's attempts to collect the Rec Corp Advance that could be viewed as harassing. Further, a full review of the email exchange between Martin and Thomas fails to reveal any communication that a reasonable jury could construe as having been intended by Bayview to inflict mental anguish. Thomas writes to Martin, "[a]ttached is the new agreement please sign and send it back today. *I live in a world that has deadlines Jay*." Pls.' App. at 43 (emphasis added). Thomas's message was merely sarcastic, not harassing—especially when viewed in the context of the entire email chain, in which Martin calls Thomas a "STALKER." *Id.* Plaintiffs have failed to identify any evidence sufficient to raise a genuine fact question as to whether Bayview's collection efforts were "unreasonable." Therefore, Bayview is entitled to summary judgment on Plaintiffs' unreasonable collection claim.

**Bayview is entitled to summary judgment on Plaintiffs' claims for violations of the TDCA and the FDCPA because the Loan was not a consumer debt.**

Bayview moves for summary judgment on Plaintiffs' TDCA and FDCPA claims on the ground that both the state and federal statutes require the debt at issue to be a "consumer debt," but the Loan in this case is not a consumer debt because the funds were provided to SGI, a corporation. Plaintiffs respond that the Loan is a consumer debt because SGI used the proceeds to purchase a home, which Martin allegedly used as a residence.

In order to prevail on their claim under the TDCA, Plaintiffs must show: (1) the debt at issue is a consumer debt; (2) Bayview is a debt collector within the meaning of the TDCA; (3) Bayview committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against

6

Plaintiffs; and (5) Plaintiffs were injured as result of Bayview's wrongful act. The TDCA defines a consumer as "an individual with a 'consumer debt.'" Tex. Fin. Code § 392.001(1). "[C]onsumer debt" means "an obligation, or an alleged obligation, primarily for personal, family, or household purposes." Tex. Fin. Code Ann. §392.001(2). Caselaw defines "personal" as affecting the private concerns of a particular individual or each of many individuals. *See, e.g., Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 136 (Tex. App.—Corpus Christi 2001, no pet.). In this case, there is no evidence that the Loan was made to a consumer or as an obligation primarily for personal, family, or household purposes. Instead, the evidence shows that SGI borrowed the Loan proceeds. SGI is a Texas corporation, and not an individual with personal, family, or household needs for which it could incur consumer debt. *See B.F. Jackson, Inc. v. CoStar Realty Info., Inc.*, 2009 WL 1812922, at *3 (S.D. Tex. May 20, 2009) (finding that a business is incapable of having personal, family, or household needs or incurring "consumer debt" under the TDCA to pay for services for such needs). Because the SGI is not a "consumer" and the Loan is not a "consumer debt," Bayview is entitled to summary judgment on Plaintiffs' TDCA claims.

Similarly, to prevail on their FDCPA claim, Plaintiffs must prove the following: (1) they have been the object of collection activity arising from a consumer debt; (2) Bayview is a debt collector, as defined by the FDCPA; and (3) Bayview has engaged in an act or omission prohibited by the FDCPA. *Hunsinger v. SKO Brenner Am., Inc.*, 2013 WL 3949023, at *2 (N.D. Tex. Aug. 1, 2013). The FDCPA defines a "debt" as "any obligation or alleged obligation of a *consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added). A "consumer," in turn, is "any *natural person* obligated or allegedly obligated to pay any debt." *Id*. §1692a(3) (emphasis added). Again, SGI is a corporation, not a natural person, and the Loan does not satisfy the definition

7

of consumer debt under the FDCPA. Bayview is thus entitled to summary judgment on Plaintiffs' claims under the FDCPA,

**Bayview is further entitled to summary judgment on Plaintiffs' claims for violations of the FDCPA based on limitations.**

Bayview also moves for summary judgment on Plaintiffs' FDCPA claims on the ground that such claims are barred by the law's one-year statute of limitations. The FDCPA provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiffs allege that Bayview violate the FDCPA in September 2014 by improperly demanding payments and by refusing payments. However, Plaintiffs did not file their lawsuit in state court until May 20, 2016. Plaintiffs' FDCPA claims are thus time-barred unless they can identify some other act by Bayview on or after May 20, 2015 or otherwise establish that the statute of limitations does not apply. In response to Bayview's limitations argument, Plaintiffs point to a letter from Bayview dated December 22, 2015, in which Bayview requests SGI complete a W-9. Pls.' App. at 93. However, the December 2015 letter cannot reasonably construed as an attempt to collect a debt. Plaintiffs fail to identify any actionable conduct by Bayview within the limitations period, and Bayview is therefore entitled to summary judgment on Plaintiffs' claims for violations of the FDCPA on limitations grounds.

**Bayview is further entitled to summary judgment on Plaintiffs' claims for violations of the TDCA because there is no genuine dispute as to any material fact on any of the alleged violations.**

Bayview moves for summary judgment on Plaintiffs' claims that the loan servicer violated Sections 392.301(a)(8), 392.303(a)(2), 392.304(a)(1)(A), (2), (4), (5)(A) & (B), and (8), of the TDCA. Am. Compl. 8–9 ¶ 4.3. In their summary judgment response, Plaintiffs waive their claim under Section 392.304(a)(1)(A)(4). Pls.' Resp. Br. [ECF No. 37] at 21 ¶ 71. Accordingly, Bayview is

entitled to summary judgment on that claim.

Bayview is further entitled to summary judgment on Plaintiffs' claim under Section 392.301(a)(8), which prohibits a debt collector from threatening to take an action prohibited by law. Plaintiffs contend that Bayview "threatened to accelerate the Note" and "take steps to terminate [SGI's] ownership of the property by a foreclosure proceeding or other action to seize the property." *Id.* In support of their argument, Plaintiffs cite to "App'x 28," but a review of this evidence does not reveal any such threats from Bayview. *See* Pls.' App. [ECF No. 38-1] at 28. Instead, the letter at page 28 is a "thank you" letter from CitiMortgage, advising Plaintiffs that the Loan servicing is being transferred to Bayview. A review of the surrounding pages in Plaintiffs' Appendix still does not reveal any threat to take action prohibited by law. It is further undisputed that Bayview was not the entity that accelerated the Loan or foreclosed on the Property. Def.'s Br. [ECF No. 25] at 21 ¶ 24. Accordingly, Plaintiffs cannot prevail on their Section 392.301(a)(8) claim because they have failed to identify any evidence sufficient to raise a fact question that Bayview threatened to take an action prohibited by law.

Section 392.303(a)(2) prohibits a debt collector from using unfair or unconscionable means that employ collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer. TEX. FIN. CODE. §392.303(a)(2). Plaintiffs argue that Bayview's attempt to collect $68,415.41, characterized as "Rec Corp Advance," Pls.' App. [ECF No. 39-1] at 68, is a violation of this provision of the TDCA. Pls.' Resp. 20 ¶ 63. Plaintiffs' brief repeatedly argues that Plaintiffs did not understand the nature of the Rec Corp Advance, and that Bayview never explained the purpose of the charge. *Id.* However, the summary judgment record establishes that Rec Corp Advance represents the payments the prior servicer and Bayview advanced to cover SGI's tax delinquency. Def.'s App.[ECF No. 26] Exs. F-1 –

F-5. Plaintiffs' general assertions that the Rec Corp Advance was an unauthorized fee are not to raise a fact question that Bayview violated Section 392.303(a)(2).

Sections 392.304(a)(1)(A) prohibits a debt collector from using a name other than the "true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection;" Section 392.304(a)(2) prohibits a debt collector from "failing to maintain a list of all business or professional names known to be used or formerly used by persons collecting consumer debts or attempting to collect consumer debts for the debt collector." TEX. FIN. CODE. §§ 392.304(a)(1)(A), (a)(2). Plaintiffs allege that Bayview violated these two provisions by signing correspondence as "Cash Management Department." Pls.' Resp. Br. 20 ¶¶ 66–69; Pls.' App. 59–60. However, a review of the challenged correspondence reveals that, right beneath the words "Cash Management Department," is a paragraph beginning with, "Bayview Loan Servicing is a debt collector." Pls.' App. 59–60. It is not entirely clear how Plaintiffs allege 392.304(a)(2) applies to these communications, but the letters make clear that "Cash Management Department" is a department within Bayview. Plaintiffs do not point to any other evidence to support their claims under these provisions of the TDCA. Accordingly, Bayview is entitled to summary judgment on these claims.

Sections 392.304(a)(5)(A)–(B) prohibit third-party debt collectors from

> failing to disclose, except in a formal pleading made in connection with a legal action . . . that the communication is an attempt to collect a debt and that any information obtained will be used for that purpose, if the communication is the initial written or oral communication between the third-party debt collector and the debtor, . . . [or] that the communication is from a debt collector, if the communication is a subsequent written or oral communication between the third-party debt collector and the debtor.

Bayview moves for summary judgment on Plaintiffs' claims that it violated these provisions on the ground that Plaintiffs failed to come forward with evidence of any of Bayview's communications that fail to contain the statutorily-required notice. Def.'s Br. 25 ¶ 32. Plaintiffs respond that Martin's emails with Thomas violate the notice requirement. Pls.' Resp. 21 ¶ 73; Pls.' App. 31–55. A review

of the Martin-Thomas email correspondence shows Thomas sent Martin a form, which Martin filled out and sent back. Pls.' App. 54. Martin thanks Thomas for his efforts on the loan, and Martin asks if the principal balance on the Loan is $87,668.07. *Id.* at 51–52. Thomas replies in the affirmative. *Id.* Next, Martin calls Thomas a "STALKER" and asks what Thomas wants. *Id.* at 51. Thomas replies that a new agreement is attached, asks Martin to sign and send back to him that day, and reminds Martin that he (Thomas) lives "in a world that has deadlines." *Id.* Thomas emailed Martin a form, and Martin continued to correspond and ask Thomas questions. *Id.* Nowhere in the email chain does Thomas demand payment from Martin. The evidence thus fails to raise a question of material fact as to whether the communications were "an attempt to collect on a debt." Therefore, Bayview is entitled to summary judgment on Plaintiffs' claims under Sections 392.304(a)(5)(A)–(B).

Bayview moves for summary judgment on Plaintiffs' Section 392.304(a)(8) claim, which prohibits "misrepresenting the character, extent, or amount of consumer debt." To establish a claim under this provision, Plaintiffs must show that Bayview made a representation that led Plaintiffs to be unaware (1) that they had a mortgage debt; (2) of the specific amount they owed; or (3) that Plaintiffs defaulted. *Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 832 (5th Cir. 2015). Plaintiffs point to the Fresh Start program as evidence of Bayview's violation. As discussed, the evidence establishes that Plaintiffs failed to comply with Fresh Start's requirements because they never enrolled in Auto Pay. Def.'s App. at Exs. A ¶ 7, A-6. Plaintiffs have failed to satisfy the *Rucker* requirements, and therefore, summary judgment should be granted for Bayview on all of Plaintiffs' claims under Section 392.304(a)(8) as well.

**Bayview is entitled to summary judgment on Plaintiffs' claim for breach of contract.**

Plaintiffs claim that Bayview breached the Loan agreement because the Dallas County Tax Records show that the lenders paid $51,867.89 in taxes, but Bayview charged Plaintiffs $68,415.41. Am. Compl. [ECF No. 10] at 10 ¶ 4.7. To prevail on a breach of contract claim under Texas law, a

plaintiff must prove: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *Sauceda v. GMAC Mortg. Corp.,* 268 S.W.3d 135, 140 (Tex. App.— Corpus Christi 2008, no pet.); *Smith Int'l, Inc. v. Egle Group, L.L.C.*, 490 F.3d 380, 387 (5th Cir. 2007). The summary judgment evidence is insufficient to raise a genuine fact issue that Plaintiffs could establish the second or third fourth elements of their breach of contract claim. Therefore, Bayview is entitled to summary judgment.

Plaintiffs cannot prevail on their claim for breach of contract because they failed to identify any evidence sufficient to raise a fact question that they performed or tendered performance on the Loan at issue. Bayview has submitted uncontroverted summary judgment evidence that Plaintiffs defaulted on the Loan, even before Bayview began servicing the Loan in December 2013. Def.'s App. at Ex. B; Exs. F-1– F-5. SGI had a substantial and lengthy tax default from 2004 to 2012. *Id.* at Ex. F-5. From June 26, 2012 to June 15, 2016, multiple notices of tax delinquencies were sent to Plaintiffs stating that CitiMortgage, the servicer at that time, had advanced the tax payments for Plaintiffs. *Id.* at Exs. F-1–F-5. CitiMortgage sent a breakdown of payments made and received on Plaintiffs' mortgage account. *Id.* at F-5. The breakdown showed that despite Plaintiffs' occasional payments to the account, Plaintiffs were still delinquent by $65,742.27. *Id.* Indeed, Plaintiffs do not dispute that they were obligated to pay property taxes under the Deed of Trust. Pls.' Resp. Br. 26 ¶ 102.

Plaintiffs admit that their failure to pay property taxes on the Property "would ordinarily be fatal to the second element of a breach of contract claim." *Id.* However, they argue that their breach of the Deed of Trust is not at issue because Martin signed the Fresh Start Acknowledgement on December 19, 2013. Pls.' Resp. Br. 27 ¶ 105. The Fresh Start did not relieve Plaintiffs of their obligation to pay taxes on the Property. Further, as discussed above, Plaintiffs did not comply with the terms and conditions of Fresh Start, and therefore, it was not effective. Plaintiffs cannot raise a genuine fact issue that they performed, or tendered performance, under the Loan agreement. Bayview

12

is therefore entitled to summary judgment on Plaintiffs' claim for breach of contract. *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 341 (5th Cir. 2012) (affirming district court's grant of summary judgment on the ground that plaintiff's undisputed failure to make timely loan payments precluded breach of contract claim).

## CONCLUSION

Bayview has met its burden of demonstrating there is no genuine issue of material fact for trial on Plaintiffs' claims for unreasonable debt collection, violations of the Texas Debt Collection Act, the Texas Deceptive Trade Practices Act, and the federal Fair Debt Collection Practices Act, wrongful foreclosure, and breach of contract. Therefore, the Court GRANTS Bayview's Motion for Summary Judgment [ECF No. 24] and DISMISSES Plaintiffs' claims against Bayview with prejudice.

**SO ORDERED**.

March 20, 2018.

_____
DAVID C, GODBEY
UNITED STATES DISTRICT JUDGE